**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

**JOHN PATRICK NEWTON,**

        **Petitioner,**

vs.

        **No. 3:13-CV-02488-D-BK**

**UNITED STATES OF AMERICA,**

        **Respondent.**

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**

Pursuant to *Special Order* 3 and 28 U.S.C. § 636(b), Petitioner's counseled *Motion to Vacate Conviction and Sentence* (Doc. 1) has been referred to the undersigned for findings, conclusions, and a recommendation. For the reasons that follow, it is recommended that the motion be **DENIED**.

**I.  BACKGROUND**

Pursuant to a plea agreement, Petitioner pled guilty to (1) conspiracy to distribute a controlled substance (marijuana); (2) maintaining a drug-involved premises; (3) possession of a controlled substance with intent to distribute (marijuana); and (4) a money laundering conspiracy, and was sentenced to a total of 292 months' imprisonment and an eight-year term of supervised release. *See United States v. Newton*, No. 3:09-CR-103-D (N.D. Tex., Dallas Div.) (Doc. 138; Doc. 218). The United States Court of Appeals for the Fifth Circuit affirmed the conviction. *United States v. Newton*, 463 F. App'x 462 (5th Cir. 2012). Petitioner raises three claims and two sub-claims in this timely section 2255 motion, and he requests discovery of

*Brady* and *Giglio* material.[1]  (Doc. 2).  The government argues that the section 2255 motion lacks merit.  (Doc. 7).

## II. ANALYSIS

### 1. Forged Signature on the Indictment and Related Ineffective Assistance of Appellate Counsel (Claims B and F)

Petitioner claims that the court lacked subject-matter jurisdiction to convict him because the signature of the grand jury foreman on his indictment was forged.  (Doc. 2 at 7).  Petitioner's claim fails for at least two reasons.  First, he challenges the original indictment that was returned against him, *see Newton*, No. 3:09-CR-103-D, Doc. 203-1 at 1-4, but he pled guilty to a superseding indictment, *id.* at Doc. 30 (superseding indictment); Doc. 138 (factual resume); Doc. 236 at 3 (rearraignment transcript).  The sole count of the original indictment and the first count of the superseding indictment as alleged against Petitioner are identical.  Moreover, the foreperson's signature on the superseding indictment appears to be that of someone other than the individual who signed the original indictment and handwriting examplars Petitioner presented in support of this claim.  *Cf. Newton*, No. 3:09-CR-103-D, Doc. 30 at 11 *with* Doc. 203-1 at 2-3.  Thus, Petitioner's challenge to the original indictment is moot.

Petitioner cannot contest the foreman's signature for the additional reason that defects in an indictment do not deprive a court of jurisdiction to adjudicate a case.  *United States v. Cotton*, 535 U.S. 625, 630-31 (2002).  Even the complete absence of a foreperson's signature is "a mere technical irregularity that is not necessarily fatal to the indictment."  *Hobby v. United States*, 468 U.S. 339, 345 (1984).  Indeed, the Supreme Court has noted that "the impact of a federal grand jury foreman upon the criminal justice system and the rights of persons charged with [a] crime is 'minimal and incidental at best.'"  *Id.* (citation omitted).  The allegedly forged signature in this

---

[1] *Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963).

case does not impact subject matter jurisdiction because to "confer subject matter jurisdiction upon a federal court, an indictment need only charge a defendant with an offense against the United States in language similar to that used by the relevant statute." *United States v. Scruggs*, 691 F.3d 660, 668 (5th Cir. 2012), *cert. denied*, 133 S.Ct. 1282 (2013) (quoting *United States v. Jacquez-Beltran*, 326 F.3d 661, 662 n.1 (5th Cir. 2003) (per curiam)). "That is the extent of the jurisdictional analysis." *United States v. Scruggs*, 714 F.3d 258, 262 (5th Cir. 2013), *cert. denied*, 134 S.Ct. 336 (2013). Finally, because Petitioner's jurisdictional challenge fails on the merits, his appellate counsel cannot have been ineffective for failing to raise it on direct appeal. *See United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999) (counsel cannot be deemed ineffective for failing to raise a meritless argument). For the reasons stated, the Court should deny Petitioner's claims B and F.

**2. Conflict of Interest (Claim C)**

Petitioner next contends that his representation was unconstitutionally deficient because, after the superseding indictment was returned, his first attorney, Dan Wyde, simultaneously represented both him and his co-defendant, Kurt Vollers. (Doc. 2 at 12-13). Petitioner claims that during the months of contemporaneous representation, he insisted on defending against the charges while Vollers was proferring and providing incriminatory statements about Petitioner to the government at Wyde's behest. (Doc. 2 at 13). He seeks production of all notes, memoranda, and records maintained by the government regarding all debriefings and meetings between Wyde and/or Vollers concerning himself as well as *Brady* and *Giglio* material. (Doc. 2 at 14, 16). Petitioner's claim fails on the merits.

To establish a Sixth Amendment violation based on a conflict of interest arising from multiple representation, a section 2255 movant must show that his counsel was acting under the

influence of an actual conflict that adversely affected representation. *United States v. Culverhouse*, 507 F.3d 888, 892 (5th Cir. 2007) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980) and *Mickens v. Taylor*, 535 U.S. 162, 169 (2002) (clarifying *Cuyler* standard)). "[A] defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Cuyler*, 446 U.S. at 349. The *Cuyler* standard "is not properly read as requiring inquiry into actual conflict as something separate and apart from adverse effect. An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance." *Mickens*, 535 U.S. 172 at n.5 (quotation omitted). Adverse effect, within the meaning of *Cuyler* is a lower standard than the actual prejudice standard required by *Strickland v. Washington*, 466 U.S. 668, 674 (1984). *See Perillo v. Johnson*, 205 F.3d 775, 806 (5th Cir. 2000). It "may be established with evidence that some plausible alternative defense strategy or tactic could have been pursued, but was not because of the actual conflict impairing counsel's performance." *Id.* at 781 (internal quotations omitted). In short, "defects in assistance that have no probable effect upon the trial's outcome do not establish a violation" of a criminal defendant's right to the assistance of effective counsel. *Mickens*, 535 U.S. at 166.

In the present case, the government conceded the existence of a conflict of interest when, on August 10, 2009, it moved to disqualify counsel from representing Petitioner based on Wyde's simultaneous representation of Vollers dating back to May 2008. *Newton*, No. 3:09-CR-103-D, Doc. 49 at 2, 4-7. On September 22, 2009, the Court granted the motion, which Petitioner did not oppose. *Id.* at Doc. 72. And, on October 29, 2009, attorney Scott Palmer entered his notice of appearance on Petitioner's behalf. *Id.* at Doc. 89.

4

Petitioner contends that the prejudice stemming from Wyde's conflicted representation was manifest, seemingly to suggest that he need not show any adverse effect. *See* Doc. 2 at 16 (citing *Mickens v. Taylor*, 535 U.S. 162, 166 (2002) for the proposition that prejudice is presumed when the assistance of counsel is denied entirely or during a critical stage of the proceeding). *Mickens*, in fact, does not stand for that proposition, but does engage in some discussion of other cases that touch upon the subject. As is relevant here, the Supreme Court in *Holloway v. Arkansas*, 435 U.S. 475, 488 (1978) created an automatic reversal rule where defense counsel was forced to represent co-defendants over his timely objection, unless the trial court had determined that there was no conflict. *Holloway*, 435 U.S. at 488 ("[W]henever a trial court improperly requires joint representation over timely objection reversal is automatic"). In *Mickens*, however, the Court declined to extend the automatic reversal rule to a case where the trial court had not inquired into defense counsel's potential, but obvious, conflict of interest. 535 U.S. at 171-73. The situation presented in the case at bar is unlike that in *Holloway*. Here, the Court disqualified Wyde upon the government's motion and did not require him to continue laboring under a conflict of interest. Thus, the automatic reversal rule is not applicable.

Accordingly, Petitioner must show that there was an actual conflict of interest that resulted in an adverse effect on his criminal proceeding. *Mickens*, 535 U.S. 172 at n.5. The government argues in opposition to Petitioner's section 2255 motion that the court remedied any conflict of interest before Petitioner suffered an adverse effect. (Doc. 7 at 25). The Court agrees. A review of the criminal docket sheet reveals that from Wyde's notice of appearance until the time of his withdrawal less than five months later, Wyde repeatedly sought Petitioner's pretrial release although all three motions were denied. *Newton*, No. 3:09-CR-103-D, Doc. 12, Doc. 13, Doc. 14, Doc. 18, Doc. 60, Doc. 65, Doc. 73. Shortly after the superseding indictment

adding Vollers as a defendant was returned, the government moved to disqualify Wyde and once that motion was granted, Palmer took over the case, securing trial extensions so that he could file comprehensive motions to suppress and to dismiss the indictment, *id.* at Doc. 108, Doc. 110, and an amended motion to suppress and request for a *Franks* hearing, *id.* at Doc. 122.[2] When those motions were unsuccessful, Petitioner pled guilty. Although Petitioner complains that Wyde urged him to cooperate with the government, this had no adverse effect because Petitioner did not decide to plead guilty until Palmer undertook his representation. Further, though Petitioner urges that the government took Vollers' incriminatory proffers and statements while both were represented by Wyde, he does not explain how this had a probable effect on the outcome of his criminal case. *See* Doc. 2 at 13; *Mickens*, 535 U.S. at 166. Accordingly, this claim should be denied.

**3. Ineffective Assistance of Counsel (Claim D)**

Petitioner argues that Palmer was ineffective in his representation of him during both the hearing on his motion to suppress and throughout the guilty plea process. (Doc. 2 at 18-20). Those claims are addressed separately below.[3]

*A. Applicable Law*

To establish ineffective assistance of counsel, a petitioner must show that counsel's performance was deficient and that he was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). Failure to establish either deficient performance or prejudice defeats the claim. *Id.* at 697. To prove the deficient performance prong of the *Strickland* test, a petitioner must show that counsel made errors so serious that he or she was not functioning as the counsel

---

[2] *Franks v. Delaware*, 438 U.S. 154 (1978).
[3] In his section 2255 motion and supporting brief, Petitioner fleetingly notes that counsel also provided ineffective assistance at his sentencing, but he does not provide any further explanation. *See* Doc. 1 at 7; Doc. 2 at 20.

guaranteed by the Sixth Amendment.  *Id.* at 687.  The proper measure of attorney performance is reasonableness under prevailing professional norms.  *Id.* at 688.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  *Id.*  To prove prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

    B.  *Appeal Waiver*

As is discussed below, Petitioner's knowing and voluntary guilty plea waived his challenges to counsel's performance.  *See Broce*, 488 U.S. at 569 ("when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary").  Further, Petitioner's claims fail on the merits.

    C.  *The Suppression Motion*

Petitioner argues that Palmer's performance at the hearing on his suppression motion was constitutionally deficient in that he failed to effectively impeach Officer Garza's testimony that he could see Petitioner in a vehicle, although he could not identify the make or model of the vehicle or its tag number.[4]  (Doc. 2 at 18).  He also contends that Palmer failed to argue that police officers should have known that Vollers lacked authority to consent to a search of Petitioner's property.  *Id.*

As an initial matter, Petitioner does not direct the Court to the "earlier statements" or "reports" with which Palmer should have impeached Garza based on purported conflicts.  In any

---

[4] Although Petitioner refers to the witness in question as Officer Chavez, no such witness testified at the hearing.  It appears from the context that Petitioner intended to refer to Officer Garza, which is the witness that the government discusses in its response.  (Doc. 7 at 27).

7

event, at the suppression hearing, Palmer did question Garza about his first identifying the car Petitioner was driving as a Mercedes Benz, rather than a BMW, and Garza's failure to correctly note the first letter of the license plate, which led to the police initially being unable to track the car. *Newton*, No. 3:09-CR-103-D, Doc. 162 at 174-75. While Petitioner may have desired a more in-depth examination of Garza on these topics, Palmer's performance did not render his assistance constitutionally ineffective. Simply put, Petitioner has not demonstrated that Palmer made errors so serious that he was not functioning as the counsel guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Palmer's presentation at the suppression hearing was reasonable when measured against prevailing professional norms. *Id.* at 688. Moreover, Petitioner's claim that Palmer did not argue that the police knew Vollers lacked authority to allow the search of his property is inaccurate, as Palmer argued at length in Petitioner's motion to suppress that Vollers lacked such authority. *Newton*, No. 3:09-CR-103-D, Doc. 109-2 at 38-47.

   *D. Guilty Plea*

   Petitioner next asserts that Palmer did not accurately relate to him the terms of the plea agreement, including that (1) he was waiving his right to appeal except as to the denial of his suppression motion; and (2) he was stipulating to a drug quantity that was two levels higher than what he was told would determine his guidelines range. (Doc. 2 at 19-20).

   In the context of a guilty plea, the prejudice prong of *Strickland* "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). The petitioner bears the burden of demonstrating that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* A "reasonable probability" is one "sufficient to

undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "That requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403 (2011) (citation omitted).

Both of Petitioner's arguments are refuted by his sworn declarations to the Court at his rearraignment, which are afforded the "strong presumption of verity." *See United States v. Palmer*, 456 F.3d 484, 491 (5th Cir. 2006) (quotation omitted); *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) (absent independent evidence containing indicia of reliability, a prisoner "will not be heard to refute [his] testimony given at a plea hearing while under oath"). Further, Petitioner's factual resume and his consent to enter a conditional guilty plea were detailed and clear. *Newton*, No. 3:09-CR-103-D, Doc. 137, Doc. 138. The appellate waiver was plainly limited to the suppression issue, and there was no agreement on drug quantity or any other aspect of Petitioner's sentence. *Id.*, Doc. 137. At the rearraignment, the Court discussed with Petitioner at length his understanding of the charges, his rights, his knowing and voluntary decision to plead guilty, and his limited appellate rights. *Id.*, Doc. 236 at 4, 7-11, 22. Petitioner agreed that counsel had thoroughly discussed all aspects of the case with him and that he was satisfied with the representation. *Id.* at 6-7. He acknowledged that no one could predict his sentence, that no one had promised him a particular sentence, and that the Court would ultimately determine his sentence. *Id.* at 20-21. In addition, the Court of Appeals for the Fifth Circuit rejected Plaintiff's claim on appeal that the appellate waiver was confusing and that its enforcement would cause a miscarriage of justice, finding that the waiver was valid and enforceable. *Newton*, 463 Fed. App'x. at 469-70. Accordingly, this claim fails as well.

### III. CONCLUSION

For the foregoing reasons, it is recommended that the section 2255 motion be **DENIED**.

**SO RECOMMENDED** on March 24, 2014.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In <u>order</u> to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE